**VALLEY CAMP, W. O. W., v. BETHANY LODGE, F. & A. M.**

No. 5993.

Court of Appeal of Louisiana.
Second Circuit.

June 28, 1939.

Rehearing Denied July 17, 1939.

John Y. Gibbs, of Natchitoches, for appellant.

R. B. Williams, of Natchitoches, for appellee.

TALIAFERRO, Judge.

The sole issue tendered by this suit is, as between the parties thereto, who has and is entitled to the possession of the ground floor of a two story building situated in the

village of Campti, Louisiana, which is owned by the defendant?

Plaintiff owned the building and lot whereon it is located, but sold same to defendant on August 18, 1920, for a cash price. The act of sale evidencing the transfer of title contains no stipulation whatever relative to plaintiff's right to use, occupy or possess the lower floor of the building; nor does the copy of the resolution, attached to and recorded with the deed, make reference thereto.

Plaintiff alleges that in addition to the cash consideration for which the property was conveyed by it, "that it was mutually agreed and understood by it and the said Bethany Lodge No. 360, Free & Accepted Masons, * * * that petitioner was granted a perpetual usufruct and use of that portion of the above described Lodge House known as the downstairs hall." This part of the building will hereinafter be referred to as the hall.

It is further alleged that since said sale, plaintiff has continuously and without any interference or objection on part of defendant, used and occupied, for the purposes of its meetings, the said hall, until the commission of the acts of violence and opposition necessitating this suit.

Plaintiff also alleges that defendant, acting through a committee of its selection, nailed up with boards the main entrance to the said hall and otherwise endeavored to prevent it from exercising its right of possession thereof; that defendant's action, in these respects is, in reality, an unlawful attempt to evict petitioner from its rightful possession of said hall, in total disregard of the agreement which vouchsafed to it such possession.

To protect it in its alleged legal possession of the hall, plaintiff procured the issuance of a temporary restraining order and a rule nisi on defendant to show cause why a preliminary injunction should not issue to prohibit defendant from interfering with its right of possession. It is prayed that after trial, the injunction be perpetuated; that the "validity of its perpetual usufruct" of the hall be recognized and decreed.

Defendant excepted to the petition as not disclosing a cause nor a right of action and attached thereto and made a part thereof, the deed whereby it acquired the building and lot from plaintiff. The exception was not passed on. Subsequent to its filing, plaintiff, over defendant's objection, filed an amended petition, the burden of which is that should the court not "sustain the plea for a perpetual usufruct on the premises herein described", that since it has been in peaceable, continuous and uninterrupted possession thereof for eighteen years, such possession should be recognized by the court and, inferentially, that plaintiff should be allowed, without limit or term, to continue the exercise thereof without interference by defendant.

The record does not clearly disclose that the rule nisi was tried; but we assume that there was a trial thereof and that a preliminary injunction issued as bond therefor was given.

The essential allegations made by plaintiff, upon which its hopes for success herein are based, are denied by defendant. Defendant avers that the measures taken by it to prevent plaintiff from illegally using and possessing the hall in question were lawful in their nature and were but the exercise of the rights and prerogatives incident to and following from perfect ownership.

In reconvention, defendant alleges that it has been damaged and injured as a direct result of the issuance of the injunctive process provoked by plaintiff in this, to-wit:

1. Attorney's fee of $50 for services in securing a dissolution of the injunction and the restoration of possession to it of the property; and

2. Loss of revenue or rent from the hall at $6 per month, because of its inability to lease same.

Judgment for these amounts is prayed for with rejection of plaintiff's demands.

After trial on the merits there was judgment for the plaintiff "maintaining and perpetuating the injunction herein issued." Defendant appealed.

Plaintiff introduced in evidence, over defendant's objection, its minute entries of July 1, 1920, which contain the following:

"Committee reports that the masons offer Seven Hundred Fifty ($750.00) Dollars and agree to repair the lower part and rent to the W. O. W. at 50¢ per month indefinitely. Moved that the offer be rejected; no second, the move was withdrawn. Moved by J. P. Seabough, seconded by R. S. Taylor, that the offer be accepted. Carried. Moved and carried that the proceeds of the sale be appropriated to members in good standing." There is a slight intimation that these minutes may not accurately reflect the Camp's true action.

The resolution of the defendant lodge, anent the purchase of the property, unequivocably authorizes its purchase for the cash price of $750. As above stated, the resolution of plaintiff,. authorizing sale of property to defendant, certified to by its then clerk, who also held that office at the time of trial, is as equally clear and specific as that of defendant's. Neither mention the subject of possession.

The record shows that after the sale to defendant, plaintiff continued to hold its regular monthly meetings in the hall for nearly two years. Its membership was largely made up of persons connected with or employed by a local lumber company, which about that time ceased operations. The membership then began to shrink.

There is no record of a regular or called meeting of plaintiff's members after January 1, 1922, until in the early part of the year 1938. We are convinced that between these dates no meetings were held in the hall, except possibly one or two of a general nature which were addressed by persons representing the parent order, interested in reviving and reorganizing the local Camp.

About the time plaintiff ceased to use the hall, or shortly thereafter, defendant leased it to the local organization of the Knights of the Ku Klux Klan, which occupied it for its own purposes for several years; in fact, until the virtual suppression of its activities by law after the election of Governor Fuqua in 1924. The Klan made some changes in the hall by partitioning, etc., to meet its needs.

After the Ku Klux Klan ceased to use the hall, it remained unlocked. Its front door was continuously open. One witness refers to its then status as being a "catchall". Anyone who desired to do so had free access thereto. Only a portion of plaintiff's equipment remained therein. Its regalia was removed.

It may be said, in passing, that from January 1922 to January, 1938, plaintiff's charter was not forfeited. It maintained a semblance of organization. Dues were paid by the greatly reduced membership to the clerk and remittance by him made to the parent order of the portion due it.

In the latter part of the year 1937, a move was instituted by some of the Camp's members to revive and reorganize it. This succeeded measurably, and in the early part of 1938 meetings were held in the hall. A lock was put on the door. Some meetings were held before the Masonic Lodge became aware that such was being done. Its permission had not been sought. Immediately thereafter, plaintiff's right to use the hall and the rent it should pay therefor, if permitted to use it, became topics of conversation among the members of both orders. Each appointed a committee to deal with the question.

Plaintiff's clerk testified that its committee was appointed "for the purpose of negotiating a rent agreement with defendant of the lower floor of this hall". Considerable discussion of the matter was had between members of the two committees. They were unable to reach an agreement. The monthly rent asked' by defendant committee was considered too high. Plaintiff's committee endeavored to lease other halls in which to meet.

These actions on the part of plaintiff and its committee men clearly demonstrate a consciousness on their part that it had no right of possession to the hall. If this be not true, why try to effect an agreement, giving to it the hall's use?

After negotiations were broken off, defendant's committee informed the members of plaintiff's committee that no further meetings would be allowed held by the Camp in the hall, and that it would be nailed up. This was done. However, members of the Camp forced their way into the hall in November, 1938 and have since held meetings therein. Defendant had three of these members arrested on criminal charges. This suit followed. It was filed on November 22, 1938.

Defendant was not bound by what is said in plaintiff's minutes contrary to the resolution tendered by its officers to defendant, on the faith of which the building and lot were purchased. It is certain plaintiff had not paid a penny rent for the time it did use the hall after selling it. It is probable this use was by mere sufferance of defendant, some of whose members were also affiliated with plaintiff.

But granting, arguendo, that defendant was bound by the recitals of the minutes to the effect that plaintiff should have the use of the hall "at 50¢ per month indefinitely", it had the right to terminate at will the effect of such a stipulation. Articles 2685 and 2686 of the Civil Code are pertinent. We quote them:

"If the renting of a house or other edifice, or an apartment, has been made without fixing its duration, the lease shall

be considered to have been made by the month." Art. 2685.

"The parties must abide by the agreement as fixed at the time of the lease. If no time for its duration has been agreed on, the party desiring to put an end to it must give notice in writing to the other, at least ten days before the expiration of the month, which has begun to run." Art. 2686.

The exercise of the rights conferred by these articles was effectively demonstrated when the hall was leased exclusively to another order for several years, without protest or objection from plaintiff, and after its abandonment by plaintiff as a place of meeting.

Article 3449 of the Civil Code, relied on by plaintiff to sustain its asserted right to hold the hall over defendant's objection, affords it little comfort. The pertinent parts thereof read as follows:

"A possessor of an estate loses the possession against his consent:

"1. When another expels him from it, whether by force in driving him away, or by usurping possession during his absence, and preventing him from re-entering.

"2. When the possessor of an estate allows it to be usurped and held for a year, without, during that time, having done any act of possession, or interfered with the usurper's possession."

Plaintiff's resumed possession of the hall does not date back one year prior to institution of this suit, and surely such possession has not been exercised with the free consent of the owner, nor without some interference from it.

Defendant had the absolute right to nail up the hall's doors, as it did, to protect its possession thereof; and in forcing entry thereto in the manner disclosed by the record, plaintiff's members actively violated private property rights protected and guaranteed to defendant under the constitution and laws of the state, and were, at least, trespassers.

The quantum of the fee due defendant's counsel, as an element of damages, is submitted without proof, to the court for determination. We have the right to do this. The amount of the fee sued for is certainly a reasonable compensation for the services rendered by such counsel in both courts. Plaintiff is responsible therefor.

The testimony adduced on the question of the value of the hall's use monthly, is not definite. Defendant offered to lease it for $3.50 per month. This was declined by plaintiff. A tentative fixing of $2 per month was discussed, but this also fell by the wayside. We feel certain that the use of the hall is well worth $2 per month. Plaintiff is due to pay this amount of rent from February 1, 1938, until possession is surrendered to defendant.

For the reasons herein assigned, the judgment appealed from is hereby annulled, reversed and set aside; and there is now judgment in favor of defendant and against plaintiff, dissolving the injunction sued out, with damages, and rejecting the demands of the latter and dismissing its suit with costs.

It is further ordered, adjudged and decreed that defendant, Bethany Lodge, No. 360, Free and Accepted Masons, do have and recover judgment against the plaintiff, Valley Camp No. 289, Woodmen of the World, for the sum of Fifty ($50) Dollars with legal interest thereon from judicial demand, and for the additional sum of Thirty-Four ($34) Dollars as rent for the hall from February 1, 1938, to July 1, 1939, with interest from the end of each month for which due at the legal rate; and for Two ($2) Dollars per month after July 1, 1939, while possession of the hall is withheld from defendant.